[Civ. No. 9668.   Fourth Dist., Div. Two.   July 25, 1969.]

LARRY NELSON TAYLOR, Petitioner, v. THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

Charles E. Ward, Public Defender, and H. Raymond Rager, Deputy Public Defender, for Petitioner.

Lowell E. Lathrop, District Attorney, and Joseph D. Canty, Jr., Deputy District Attorney, for Respondent and for Real Party in Interest.

GARDNER, J. pro tem.*—This is a petition for writ of prohibition by defendant petitioner after an unfavorable ruling on a hearing under Penal Code, section 1538.5.

Officer Griggs of the San Bernardino Police Department was the only witness. His testimony can be summarized as follows:

On September 24, 1968, at 5 a.m., officers of the San Bernardino Police Department stopped petitioner's vehicle to cite him for a mechanical violation. Officers Gurnux and Robins made the original stop. Officer Griggs arrived as ''back up.'' Officers Gurnux and Robins asked Officer Griggs to write out the citation which he did. At the same time Officer Robins was

---

*Assigned by the Chairman of the Judicial Council.

making a radio inquiry as to whether there were any warrants out for petitioner. For reasons not set forth in the record Officer Gurnux requested permission of petitioner to search his vehicle, to which request petitioner agreed. The search revealed nothing of interest. Officer Robins was then advised that there was an arrest warrant outstanding for petitioner for a traffic offense. Petitioner was placed under arrest by Officer Gurnux on the traffic warrant. Officer Gurnux then asked the petitioner to empty his pockets or to take out whatever he had in his pockets. He removed some money and a Zippo-type cigarette lighter. Officer Gurnux asked, ''May I see the cigarette lighter?'' The petitioner said, ''Yes,'' and handed it to him. Officer Gurnux snapped the top of the lighter open and placed the lighter on the hood of the police unit. The petitioner then placed the other articles from his pocket on the hood. Officer Griggs did not observe carefully but he testified Officer Gurnux ''searched his [petitioner's] person'' and saw him ''run his hands over his arms and legs. . . .'' Officer Griggs then took the cigarette lighter from the hood of the police unit, took it apart and in a recessed area found a useable quantity of hashish. No consent was obtained from petitioner to inspect the inside of the cigarette lighter.

Officer Griggs testified that the custom of having the arrestee empty his pockets was to enable the officers to thereafter conduct a pat-down search for weapons. If the articles taken from his pockets were such objects as money, cigarettes, matches, etc., they would be returned to the arrestee, but no metal objects would be so returned. This was because hard metal objects could be used as weapons. Officer Griggs testified that under no condition would they have returned the cigarette lighter to petitioner prior to booking him because '' [I]t could be placed in the fist, like this, and used for a punch, or . . . if the person was in the back seat of a police unit he could set the back seat on fire. It could be used to burn the officer or to throw at the officer.''

The reason Officer Griggs took the cigarette lighter apart was because of his experience as a booking officer with the San Bernardino Sheriff's Department when on three or four occasions he had taken cigarette lighters apart and found Schick-type razor blades placed in the bottom of Zippo-type lighters or other types of razor blades secreted between the outside of the case and the inside portion of this type lighter.

Officer Griggs stated that the petitioner was in custody at

the time the cigarette lighter was taken apart, that he intended to book him, that upon booking the petitioner all items in his pockets would be taken from him except cigarettes and matches, would be placed in an envelope and returned to him on his release from custody.

Three issues are presented: (1) was it a violation of the petitioner's constitutional rights for the officer to order him to empty his pockets prior to a pat down search; (2) was the original taking of the lighter a violation of the defendant's constitutional rights; and (3) was the subsequent search of the cigarette lighter a violation of these rights?

Since society, through the judicial process, orders police officers to arrest individuals and take them into custody under warrants of arrest, no one has ever seriously doubted the right of the police officers to search the person arrested for weapons and other things which might be used to harm the officer or effect an escape from custody. ▮ In *Chimel* v. *California*, 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], this principle was reaffirmed in the following language: "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise the officer's safety might well be endangered and the arrest itself frustrated." (*Chimel* v. *California, supra,* p. 2040 [23 L.Ed.2d at p. 694].) This right to search for weapons was enlarged to the temporary detention situation in *Terry* v. *Ohio*, 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868], where a "stop and frisk" was sustained because it was no more than a "protective . . . search for weapons." Obviously the scope of the search must be reasonably limited by the need to search for weapons and may not be extended into an unrestrained and thorough-going examination of the arrestee and his personal effects. Thus, in *Sibron* v. *New York,* 392 U.S. 40 [20 L.Ed.2d 917, 88 S.Ct. 1889], the acts of the policeman in thrusting his hand into a suspect's pocket was held to be unreasonable when the search was neither motivated by nor limited to the objective of protection.

*People* v. *Graves,* 263 Cal.App.2d 719, 733-735 [70 Cal.Rptr. 509], applies the same test for a search for weapons to an arrest for a traffic offense and takes judicial knowledge of the fact that police officers have been killed or assaulted while making arrests for traffic offenses. As was said in *People* v. *Stewart,* 189 Cal.App.2d 176, 179 [10 Cal.Rptr. 879], ". . . Any officer who, when arresting an unknown person, fails to

search that person before commencing to transport him to jail would be derelict in common caution and in all probability would experience some unpleasantness.''

■ Applying these rules to the instant situation in which the officers have arrested the petitioner on a vaid traffic warrant we hold:

(1) That the request by the officer that the arrestee empty his pockets was not unreasonable and that this request strikes the proper balance between the community's interest in the officer's right to protect himself and the individual's right to a minimum of police interference with his person. Emptying one's pockets is less of an indignity to the individual than to be subjected to a physical search of his person. It inures to the benefit of the arrestee because once his pockets have been cleared of objects which might feel from the outside to be suspicious, such as cigarette lighters, pipes and other hard objects, thereafter a very cursory ''feel'' search or pat-down search for such items as guns, knives and clubs can be made with a minimum intrusion into his person or invasion of his privacy or personal embarrassment. If the defendant ignores the request and chooses not to empty his pockets, he then incurs the risk of subjecting himself to a closer search in that the officers will then conduct a ''feel'' or pat-down search for weapons which would be understandably more of an invasion into his privacy. Such a search would obviously have brought out the cigarette lighter in this case as it has brought out in the past ''five cigarettes'' (*People* v. *Stewart, supra,* 189 Cal. App.2d 176, 179) and a ''film can'' (*People* v. *Kraps,* 238 Cal.App.2d 675 [48 Cal.Rptr. 89]).

■ (2) That the taking of the cigarette lighter from the petitioner was not unreasonable.

While a cigarette lighter may not qualify as a weapon in the traditional sense, it was the officer's testimony that it could be used in a doubled up fist as a punch or thrown at the officer or used to burn the officer or the police unit. Thus, it would appear reasonable for the officer to remove this object from the defendant.

In addition there was uncontradicted testimony that the original taking of the lighter was with consent.

■ The issue of consent is a factual one. ■ When a person freely consents to a search, there is no violation of fundamental rights and the fact that the petitioner was in custody and under arrest at the time of the search does not preclude a finding of voluntary consent. (*People* v. *Fischer,*

49 Cal.2d 442 [317 P.2d 967].) ■■■ Whether the consent was lawful or a mere submission to authority is again a question of fact. Whether it was unequivocal and specific, whether it was freely and intelligently given is again a question of fact. While the People have the burden of proving consent, it is the responsibility of the trier of facts to determine whether that burden has been met and a reviewing court will accept consent freely given as a fact proven when substantial evidence supports a trial court's finding, express or implied, that voluntary consent was given. (*People* v. *Bilderbach*, 62 Cal.2d 757, 762-763 [44 Cal.Rptr. 313, 401 P.2d 921].)

Thus, the taking of the cigarette lighter can be approved either on the basis of the court's implied finding of consent or the reasonable actions of the officers in removing from the petitioner that which the officers felt could be used in such a way as to harm them.

■■ (3) The search of the lighter was not unreasonable.

It was the uncontradicted testimony of the officer that razor blades are secreted in Zippo-type lighters. A razor blade would certainly qualify as a weapon. Therefore, it would appear eminently reasonable for Officer Griggs to open the lighter to see whether or not this one did contain a razor blade. He and the defendant were about to embark upon a journey together to the police station or to the jail. Leaving the petitioner in the potential possession of a razor blade would be highly indiscreet.

But, says the petitioner, the record shows that the officers never did intend to return the lighter to the petitioner and, therefore, the search was exploratory in nature and thus invalid. It appears to us that in view of the officer's knowledge he had a right to look into the lighter. To repeat, he was going to be riding back to the jail or police department with the prisoner. While he had taken from him that which he considered in the first place to be a weapon, his prior experience would indicate that he should look inside this weapon to discover just what kind of a weapon it was and just what type of person he was going to be riding with. If the officers had found a gun on the petitioner, they certainly would have checked to see if it was loaded even though they had no intention of returning the gun—loaded or unloaded. It would appear reasonable that the officer would exercise a higher degree of care for his safety with a person whose cigarette lighter contained a razor blade than one whose cigarette lighter contained only some gasoline-soaked cotton and some

flint. So also in the gun simile, the degree of care to be exercised by the officer who has taken into custody a man with a loaded gun as contrasted to a man with an unloaded gun would obviously be quite dissimilar. Therefore, under the facts of this case and with the knowledge of this officer, we hold that the search of the Zippo-type cigarette lighter was reasonable as a search for weapons and was not a general exploratory search.

The petition is denied and the stay of proceeding is terminated.

McCabe, P. J., and Kerrigan, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied September 17, 1969. Peters, J., was of the opinion that the petition should be granted.