THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
BRET PRITCHETT, Defendant-Appellee.

Fifth District   No. 78-294

Opinion filed August 2, 1979.

Howard L. Hood, State's Attorney, of Murphysboro (Raymond F. Buckley, Jr., and Martin N. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

John H. Reid and Richard J. Bennett, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant was charged by information with the unlawful possession of cannabis and phencyclidine. Prior to trial, defendant moved to

suppress physical evidence alleging that it had been obtained as a result of an illegal search and seizure. After a hearing on the motion, the Circuit Court of Jackson County suppressed all but one of the items seized and the State appealed.

On the evening of June 10, 1977, Officers Khory and Ledbetter of the Carbondale Police Department were parked in a marked squad car at the intersection of College and Illinois streets. Defendant, the operator of a green, 1969 Pontiac, stopped his automobile at this same intersection to let out a passenger. Khory testified that defendant then spun his wheels and accelerated through the intersection after the traffic light had turned red. Defendant denied going through a red light and claimed that he did not accelerate quickly. The officers proceeded to stop defendant's vehicle for the alleged traffic signal violation. Both Officers Khory and Ledbetter testified that defendant's automobile matched exactly a description of a vehicle used in a burglary the day before, which vehicle had been described as an older model Pontiac, possibly dark green in color. At Khory's request, defendant left the vehicle and leaned against the trunk so that the officer could search him. Defendant testified that one of the officers searched him completely and emptied his pockets. Defendant's rear pocket contained a sealed envelope filled with cannabis, which created a noticeable bulge. The front pocket apparently did not bulge and contained small packets of "hash oil" and "angel dust," also known as phencyclidine or PCP. Defendant was unable to state which pocket was first searched. He believed the "dust" and "hash oil" were discovered first but then added that the drugs were pulled out of his pockets at the same time.

Officer Khory, who conducted the search, testified that he believed it was necessary to search defendant because he was a burglary suspect. He "patted" down the front pocket but did not feel anything like a weapon. He then proceeded to pat down the two rear pockets and saw a white envelope, "puffed up quite a bit," protruding two or three inches above one of the pockets. The envelope did not feel as if it contained a metal object or weapon; however, Khory added that the pocket was full and that "you could not tell what was in it." He removed the envelope to determine what else might be there and found nothing. He then squeezed the envelope and concluded that it contained tobacco or a similar substance. He opened the envelope and lifted it to his nose to smell the contents and determined that it was marijuana. He thereafter conducted a thorough search and found two small cardboard squares in the front pocket which defendant later admitted contained "angel dust" and "hash oil."

Defendant was handcuffed, advised that he was under arrest and

given a citation for the traffic signal violation. Officer Khory then requested defendant's permission to search the trunk of the automobile. After defendant was advised that the car was to be towed and all its contents searched and inventoried, defendant reluctantly consented. Officer Khory opened the trunk and found two plastic bags filled with marijuana. At all times during the stop and subsequent search, defendant fully cooperated with the officers and made no threatening moves or gestures. Furthermore, defendant was subsequently found not guilty of the traffic violation.

The trial court concluded that the officers acted properly in stopping defendant's vehicle and in seizing the envelope upon feeling the back pocket bulge. The court, however, stated that the officers violated defendant's right to privacy by removing the front pocket items as there was no indication of a possible weapon. It also held that defendant had not voluntarily consented to the search of his trunk and therefore the items seized therefrom were improperly taken. Accordingly, the court suppressed the contents of the front pockets and trunk but held that the envelope containing marijuana was properly seized.

On appeal, the State argues that the officer was justified in stopping defendant's vehicle and that the circumstances warranted a protective pat-down of defendant's person. It further argues that it was proper for the officer to investigate the unknown bulge in defendant's rear pocket. It is the State's position that the officer, upon finding the cannabis, had probable cause to arrest defendant and could thereafter conduct a full search of defendant's person and an inventory search of the automobile. Defendant concedes that the investigative stop of the vehicle was proper and that the officer had authority to conduct a "pat-down" of defendant's person for weapons; however, he contends that the officer exceeded the scope of a legitimate search for weapons incident to an investigative stop and therefore had no justification to make a full search of his person and automobile after discovering the cannabis in the rear pocket.

■■■ Under the landmark decisions of *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889, which we believe apply to and control the situation presented here, a police officer may stop an individual, whom the officer reasonably suspects was engaging in, or about to engage in, criminal activity, and thereafter conduct a limited search for weapons provided he has reason to believe the suspect was armed and dangerous. The holdings of these two cases have been codified in sections 107—14 and 108—1.01 of our Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, pars. 107—14 and 108—1.01). Section 107—14 provides:

"A peace officer * * * may stop any person in a public place for

a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense * * *."

Section 108—1.01 provides:

"When a peace officer has stopped a person for temporary questioning pursuant to Section 107—14 of this Code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons."

In the present case, it is clear that the officer was justified in stopping defendant. The more difficult question, however, is whether the officer exceeded the scope of his authority in searching defendant. In the so-called "stop and frisk" situations, a police search must be confined in scope to an intrusion reasonably designed to discover objects capable of use as weapons. (*People v. Blakes* (1977), 55 Ill. App. 3d 654, 370 N.E.2d 869; *People v. Felton* (1974), 20 Ill. App. 3d 103, 313 N.E.2d 642.) We have no objection to the police officer conducting a pat-down of defendant's person after observing the bulge in the back pocket. (See *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 54 L. Ed. 2d 331, 98 S. Ct. 330.) The officer could reasonably conclude from viewing a bulge in defendant's clothing that he was armed and thus posed a serious and immediate danger to the officer. (*Pennsylvania v. Mimms.*) But once the officer determined that the bulge consisted of no more than a "tobacco like substance," he could not lawfully continue the search.

The officer testified that when he patted down defendant the envelope creating the bulge did not feel as if it contained a metal object or weapon. Nevertheless, the officer continued the search and removed the envelope from the pocket to see what else was there. While the testimony is not clear what the officer was investigating at this point, we will nevertheless assume that he was continuing his search for weapons. When he found no other objects in the pocket, the officer should have stopped the search as he no longer had reason to believe that the suspect was armed or dangerous. The subsequent affirmative acts of lifting and opening the sealed envelope for the purpose of determining its contents was clearly beyond the scope of a legitimate search for weapons.

Our holding that the police officers had no justification for examining the contents of the envelope comports with the recent Ninth Circuit decision of *United States v. Thompson* (9th Cir. 1979), 597 F.2d 187, a case which is similar, if not identical, to the present one. In *Thompson*, a police officer stopped the car which defendant was driving for three traffic violations. After defendant was unable to furnish a driver's license, the officer asked him to step out of the car and thereafter conducted a pat-down search for weapons. During the search, defendant repeatedly

attempted to reach inside his coat pocket. When the officer warned defendant not to continue doing this and defendant again attempted to do so, the officer reached inside the pocket and discovered an envelope containing checks. The officer, no longer fearful that the envelope contained a weapon, nevertheless opened it without defendant's permission. When he discovered that the checks bore a name which had been mentioned in a stolen property report, he placed defendant under arrest. The Ninth Circuit, in ruling that defendant's motion to suppress the checks should have been granted, held, as in the present case, that the stop, the pat-down search and the search of the pocket were valid; however, it likewise held that the search of the envelope was unreasonable where the officer was merely "suspicious" about the envelope and did not believe it contained a weapon.

Although we recognize that the trial court in the present case upheld the seizure of the cannabis recovered from defendant's back pocket and that the validity of this ruling is not directly before this court, we feel compelled to address this issue to the extent that it affects the validity of the front pocket and trunk searches. We note that absent a valid seizure of the cannabis from the envelope, we can find no justification for the other intrusions.

■■ Officer Khory testified that when he patted down defendant's front pocket and did not feel anything similar to a weapon, he proceeded to search elsewhere. It was only after he had found the cannabis in the back pocket that he conducted a full search of defendant's person. Such an intrusion could only be justified as a search incident to a valid arrest; however, in this case, where the arrest itself was invalid so was the ensuing search.[1]

■■ Furthermore, the State's contention that the search of the trunk was made with probable cause and was, in addition, a valid inventory search is in error and cannot justify the seizure of the additional cannabis found in defendant's car. As the seizure of the cannabis and PCP from defendant's person was invalid, these items could not provide probable cause to search the trunk. Likewise, the custodial arrest for the possession of these controlled substances was unlawful. There was therefore no need for the police to conduct an inventory search and tow the car.

---

[1] We note that under the Supreme Court decisions of *United States v. Robinson* (1973), 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467, and *Gustafson v. Florida* (1973), 414 U.S. 260, 38 L. Ed. 2d 456, 94 S. Ct. 488, a police officer may conduct a complete search of a person pursuant to a valid "custodial" arrest, even if the arrest is for a mere violation of the traffic laws. But, in the present case, Officer Khory testified that he did not intend to make a "custodial" arrest of defendant on the traffic charge and was only going to issue a traffic citation. In *Robinson* and *Gustafson*, the Supreme Court stated that it was not considering the validity of a search incident to a "routine traffic stop" where the officer simply issues a notice of violation and allows the offender to proceed.

Accordingly, it was proper for the trial court to suppress the physical evidence found in defendant's front pocket and the trunk of the automobile.

We are mindful of *People v. Palmer* (1976), 62 Ill. 2d 261, 342 N.E.2d 353, *cert. denied* (1976), 429 U.S. 871, 50 L. Ed. 2d 151, 97 S. Ct. 185, in which our supreme court held that a pre-arrest pat-down search for weapons of a motorist stopped for driving without license plates was not illegal and that the trial court properly refused to suppress a loaded .25-caliber revolver found in defendant's right rear pants pocket. The reasoning of the court suggests that if the circumstances reasonably indicate that an officer is dealing with a criminal rather than an ordinary traffic offender a search would be justified to insure the officer's safety and to prevent an escape.

While *Palmer* failed to delineate what constitutes a "criminal" as compared to an "ordinary traffic offender," we believe that under the *Palmer* rationale, the alleged presence of a traffic violation and the matching description of the car with one used in a burglary the previous day would reasonably lead the officer to believe that he was dealing with a "criminal." Under *Palmer*, this factor would justify a search of defendant's person. It would not, however, justify a "full" search absent probable cause. In *Palmer*, the police officer merely conducted a pat-down for weapons which resulted in the discovery of a revolver. In the present case, the officer, after being satisfied that defendant was not armed or dangerous, continued his search even though there was no indication that the officer feared for his safety or that defendant would attempt an escape. It is therefore our belief that Officer Khory violated not only the principles set forth in *Terry* but in *Palmer* as well.

Accordingly, for the reasons stated, the order of the Circuit Court of Jackson County suppressing the evidence found in defendant's front pocket and the trunk of the vehicle is affirmed.

Affirmed.

KUNCE and KASSERMAN, JJ., concur.