**UNITED STATES of America**

v.

**Charles L. WHITE, Appellant.**

**No. 80–1793.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 3, 1981.

Decided June 12, 1981.

■■■■■■■■■■■■■■■■■■■■■■■■■

---

Ed Wilhite, Washington, D. C. (appointed by this Court), for appellant.

Pamela B. Stuart, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, John R. Fisher and James F. Rutherford, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before MacKINNON and ROBB, Circuit Judges and AUBREY E. ROBINSON, Jr.*, United States District Court Judge for the District of Columbia.

Opinion PER CURIAM.

PER CURIAM:

Following a jury trial in United States District Court appellant White was convicted of the unlawful possession of a substantial quantity of heroin, a narcotic drug, in violation of D.C.Code § 33–402.[1] In this appeal appellant contends the trial court erred in denying his motion to suppress the heroin seized from his person when he was arrested because of the alleged nonexistence of probable cause to make the arrest.[2] We disagree with this contention and affirm.

Prior to appellant's arrest in a high narcotics area, the attention of two experienced narcotics officers was attracted to an automobile with Virginia license plates No. KZS–210, which they had seen being visited by known drug addicts on numerous prior occasions in high narcotics areas. On this particular occasion through binoculars they observed a woman passenger, Reeves, in the car count out a substantial sum of money, receive a small object from the driver, then leave the car and be quickly approached by appellant who exchanged currency for a small object. The object was sufficiently large so that Reeves could not completely close her hand. Appellant then placed the object in his right coat pocket and walked up the street. The observing officers concluded that a narcotics transaction had taken place. They then radioed their conclusion to other officers in a car on the street who arrested appellant and recovered thirteen packets of heroin from appellant's

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. The jury was discharged after it was unable to reach a verdict on the federal offense charging possession of a controlled substance with intent to distribute it, 21 U.S.C. § 841(a).

2. Appellant also argued in his brief that he had been improperly sentenced. At oral argument, however, appellant withdrew this argument.

right coat pocket. We conclude that the officers had probable cause to make the arrest and that the motion to suppress was therefore properly denied.

The two officers who observed the sale had previously demonstrated their ability to recognize narcotics transactions; ninety-five to ninety-six percent of their prior, similar observations had led to the arrest of persons possessing drugs. (Tr. 6–10, 68–71). In addition their conclusion in this particular instance was buttressed by the similarity of the participants' conduct to activity they had observed in high narcotics areas on numerous prior occasions when narcotics were sold. The character of the neighborhood as a high narcotics area was also a fact that the officers could take into consideration in reaching their conclusion that probable cause existed to arrest the participants.

 Our decisions recognize that the "high-crime" character of an area is a relevant factor in determining probable cause. *United States v. Thomas*, 551 F.2d 347, 348 (D.C.Cir.1976); *United States v. Brown*, 463 F.2d 949, 950 (D.C.Cir.1972); *United States v. Davis*, 458 F.2d 819 (D.C.Cir.1972). *See* 1 W. LaFave, Search & Seizure § 3.6, at 676–80 ("The courts have rather consistently concluded that 'the incidence of a high crime rate is a relevant circumstance to be considered in determining the existence of probable cause,' and properly so. . . . [I]f an officer observes a street corner exchange of some substance for money, such an event takes on a special meaning if it happens in a part of the community where drug traffic is intensive.") (quoting *People v. Oden*, 36 N.Y.2d 382, 368 N.Y.S.2d 508, 329 N.E.2d 188 (1975)). *Cf. Adams v. Williams*, 407 U.S. 143, 147–48, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972) (investigation in a "high-crime area" contributed to reasonableness of search for weapons after a *Terry* investigation stop).

 Past incidents of numerous law violations of a particular character in a given area definitely constitute a fact that officers may consider in the totality of circumstances they rely upon in arriving at a conclusion that they have probable cause to make an arrest. "Sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment . . . ." *Hill v. California*, 401 U.S. 797, 804, 91 S.Ct. 1106, 1111, 28 L.Ed.2d 484 (1971). This does not mean that a citizen has less rights in the high narcotics area at 14th and V Street, but it does mean that one's likelihood of apprehension in the sale or purchase of narcotics is materially increased if he elects to make a sale or purchase in an area that is widely known for numerous narcotics sales.[3]

That sellers and users congregate in a certain area is proved by the great number of narcotics arrests that occur there and that result in eventual convictions. Law enforcement officers may take such facts into consideration in evaluating whether they have probable cause to make an arrest involving recognized furtive acts and behavior that they have observed customarily accompany narcotics transactions.

We therefore find that the officers had ample probable cause to arrest appellant and affirm the district court.

*Judgment accordingly.*

---

**3.** This same principle, that parties may rely upon the likelihood of crime being greater in one area than another, was applied in a civil case. In *Illinois Farmers Ins. Co. v. Tapemark Co.*, 273 N.W.2d 630, 635 (Minn.1978), the Minnesota Supreme Court, in determining that an automobile owner had been negligent, held that he was chargeable with a higher degree of care to protect his car in a certain area where from "the character of the neighborhood" he was "aware or should be aware of circumstances that increase the probability that the car will be stolen . . . ."