The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

David Alan MARTINEZ,
Defendant–Appellee.

No. 90SA330.

Supreme Court of Colorado,
En Banc.

Dec. 17, 1990.

Donald E. Mielke, Dist. Atty., Donna Skinner Reid, Chief Appellate Deputy Dist. Atty., Golden, for plaintiff-appellant.

Al Cabral, Denver, for defendant-appellee.

Chief Justice ROVIRA delivered the Opinion of the Court.

The People bring this interlocutory appeal pursuant to C.A.R. 4.1, challenging the district court's order suppressing evidence of methamphetamine, which a police officer took from the defendant David A. Martinez during a pat-down search, and a statement made by the defendant. The district court ruled that although the officer had reasonable grounds to stop and search the defendant for weapons, the officer's examination of the contents of a small pouch in which the methamphetamine was kept exceeded the limits of a permissible protective search for weapons. We affirm.

## I

A suppression hearing established the following facts. On March 1, 1990, Officer Loar of the Lakewood Police Department was assisting other officers in the execution of a no-knock search warrant at 1768 South Newland, Lakewood, Colorado. During the course of the search, the police found cocaine, handguns, rifles, shotguns, and knives. While the search was in progress, the defendant drove up to the house and walked to the front door. As he was about to enter the house, Loar drew his gun and ordered the defendant to stop, raise his hands, and drop to his knees. While following the officer's directions, the defendant made a sudden movement with his right hand toward his right front pocket at which time he was again ordered to raise his hands. Immediately thereafter he was handcuffed.

Loar proceeded to conduct a pat-down search for weapons. He discovered two small folding-type pocket knives, a spoon, and a pouch. Several pointed objects protruded through the pouch and the officer opened the pouch and found two sheet metal screws along with two small plastic bags containing a white, powdery substance. Loar advised the defendant that he was under arrest for possession of suspected cocaine; to which the defendant replied that it was not cocaine but "speed." A field test of the powdery substance showed a positive result for methamphetamine. The officer then conducted a routine check for outstanding warrants and obtained a driver's license status report. He was informed that the defendant's driver's license had been revoked. The defendant then stated that he thought he was a habitual traffic offender. The defendant was arrested and charged with possession of a schedule II controlled substance, namely methamphetamine, in violation of sections 12–22–310, 5 C.R.S. (1985), and 18–18–105, 8B C.R.S. (1989 Supp.), driving after habitual traffic revocation and driving under suspension, revocation, and denial. After entering a plea of not guilty, the defendant moved to suppress physical evidence taken from his person, as well as the statements made by him to the police on the basis that they were obtained pursuant to an unlawful arrest or detention.

The district court found that at no time was there probable cause to arrest the defendant, but that given the circumstances and surroundings Officer Loar had reasonable grounds to fear for his safety and that he had the right to conduct a pat-down

search for weapons to ensure his safety and that of others. The trial court also found that, notwithstanding the pointed objects in the pouch, it was not reasonable for anyone to believe that there was a weapon inside. The court concluded that the officer, in opening the pouch, went beyond "what is required to protect himself and other officers to determine whether or not the defendant had weapons," and granted the motion to suppress. The People urge reversal on the ground that the police officer acted reasonably in opening the pouch taken from the defendant's pocket.

## II

■ The test to be applied in this case is whether there was reasonable suspicion to make an investigatory stop and, if so, whether Loar's seizure of the pouch was constitutionally permissible, and whether his opening of the pouch to examine its contents exceeded the limits of a constitutionally permissible search for weapons. If an officer has a reasonable suspicion that a crime has been committed or is about to be committed, and the surrounding circumstances lend themselves to the pervasive dangerous atmosphere, then he may conduct a limited search. *Terry v. Ohio*, 392 U.S. 1, 30–31, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968). The justification for the search is not the preservation of evidence or the search for probable cause, but rather the need to ensure the safety of the officer and others present. *Id.* at 29, 38, 88 S.Ct. at 1884, 1888. This court has interpreted *Terry* to impose three conditions before an investigatory stop for questioning or a frisk may take place:

(1) [T]here is an articulable and specific basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to occur; (2) the purpose of the intrusion is reasonable; and (3) the scope and character of the intrusion is reasonably related to its purpose.

*People v. Hughes*, 767 P.2d 1201, 1203–1204 (Colo.1989); *see also People v. Ratcliff*, 778 P.2d 1371, 1376 (Colo.1989); *People v. Melgosa*, 753 P.2d 221, 225 (Colo. 1988).

■ Once a valid stop has taken place, a protective search is permitted only when the officer has a reasonable basis to suspect that the person might be armed and dangerous. If there is a reasonable basis for this suspicion, the search must still be limited in scope and confined to determine whether any weapons are present and ensure the safety of the officer and others in the area. *Ratcliff*, 778 P.2d at 1377. Finally, during the course of a search the officer is permitted to "make a cursory, 'plain view' examination of any object seized for the purpose of determining whether it indeed is a weapon or some other type of dangerous instrument." *Melgosa*, 753 P.2d at 228.

Applying the aforementioned principles to the facts in this case leads us to the conclusion that the trial court was correct in its determination that the examination of the contents of the pouch exceeded the constitutionally permissible limits of a protective search for weapons.

■ The record indicates that Loar was in the house pursuant to a "no-knock" search warrant and that a substantial amount of drugs and weapons were present. Additionally, he was presented with the scenario of an unidentified person approaching the house. He could not possibly know whether this individual was armed and dangerous without performing a pat-down search. While Loar had no reasonable suspicion that the defendant was involved in any crime, we conclude that under the circumstances, with drugs and weapons present in the house, Loar was justified in making an investigatory stop of the defendant.

■ Having concluded that the officer validly stopped the defendant, we must next consider whether the purpose of the "frisk" performed was reasonable and whether the scope was reasonably related to its purpose. A valid stop does not justify a subsequent intrusion. Only when the circumstances provide an officer with a reasonable suspicion that the person is armed and dangerous may the officer conduct a pat-down search for the purpose of

his protection and others in the vicinity. *Ratcliff,* 778 P.2d at 1379. The trial court held that although some of Loar's anxiety was relieved by handcuffing the defendant, Loar nevertheless had a right to continue the search to determine whether the defendant possessed any weapons. We agree. Many different types of weapons can be easily concealed by an individual and under the circumstances here the "frisk" was reasonable.

■ Finally, the scope of and character of the search must be reasonably related to its purpose. If the officer encounters an object and removes it, he may make a "plain view" examination to determine whether or not it is dangerous. Loar testified that he felt several "sharp" points protruding from the pouch and that still fearing for his safety, he opened the pouch and found the two metal screws and the two plastic bags. However, where an object "recovered from a suspect proves to be a closed container, the officer may not open the container to examine the contents unless he can point to specific and articulable facts supportive of a reasonable suspicion that the closed container poses a danger to himself or others nearby." *Ratcliff,* 778 P.2d at 1380. The trial court found that Loar's testimony failed to establish specific and articulable facts sufficient to support a reasonable suspicion that the contents of the pouch posed a threat to his or others' safety. It concluded that no reasonable person could believe that the pouch was a weapon or that it contained a weapon. We agree with the trial court's finding and conclusion which is supported in the record.

Accordingly, we affirm the suppression ruling of the district court.