The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

John Frederick CORPANY,
Defendant–Appellee.

No. 93SA31.

Supreme Court of Colorado,
En Banc.

Oct. 4, 1993.

John Suthers, Dist. Atty., Fourth Judicial Dist., Daniel H. May, Chief Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

David F. Vela, State Public Defender, James P. Tate, Deputy State Public Defender, Colorado Springs, for defendant-appellee.

Justice ERICKSON delivered the Opinion of the Court.

This is an interlocutory appeal pursuant to C.A.R. 4.1. The prosecution seeks to reverse a suppression order entered by the El Paso County District Court in the prosecution of John Frederick Corpany for possession of a controlled substance (methamphetamine) and for unlawfully carrying a concealed weapon (a butterfly knife and a .38 caliber Derringer pistol). The trial court conducted an evidentiary hearing on Corpany's motion to suppress the evidence and concluded that the methamphetamine found in his fanny pack was unconstitutionally seized.[1] We affirm the trial court's ruling.

## I

Sometime around midnight on March 12, 1992, Officer Jerry Steckler of the Colorado Springs Police Department observed a vehicle driven by Patrick Nicks weaving between two traffic lanes. Three individu-

---

1. A fanny pack is worn around the waist and is designed to carry personal items. It serves the same function as a purse.

als, including Corpany, were passengers in the vehicle. Nicks and his wife were seated in the front seat of the automobile. Corpany was in the right rear seat. Corpany's girlfriend was in the left rear seat.

Because the automobile was weaving between lanes, Officer Steckler actuated his red and blue lights and siren to effectuate a traffic stop and issue a citation. Officer Steckler saw two passengers look back into the rear view mirror of their vehicle at his police car. He also testified that he "observed two passengers on the right side of the vehicle bending over as if they were putting something under the vehicle seat."[2] Officer Steckler advised the police dispatcher of his location and requested a backup unit.

Nicks pulled into the apartment complex parking lot where he lived. The sole basis for the traffic stop was Nicks' failure to stay in a single lane of traffic. Officer Steckler acknowledged that apart from the traffic infraction, there was no crime in progress and that he was not investigating a reported crime that had occurred or was about to occur. He admitted he had no reason to suspect that the four individuals in Nicks' automobile were in that area of Colorado Springs for any unlawful purpose.

When Officer Steckler asked Nicks for his driver's license, Nicks stated that he did not have his driver's license with him, but produced the registration papers for the automobile. Corpany and his girlfriend also stated that they had no identification with them, while Nicks' wife said that her identification was in her purse.

Officer Steckler then ordered all four individuals out of the automobile so that he could "check to see what they had put under the seat." With the four occupants outside of the vehicle, Officer Steckler searched under the front seat and found a leather purse and a fanny pack. The fanny pack was approximately ten inches long, six inches wide, and four to five inches deep. As Officer Steckler removed the fanny pack from under the seat, Corpany said "the butt pack is mine."

Officer Steckler felt the fanny pack and could tell "it was stuffed with various items inside that I couldn't identify." Even though Officer Steckler found no evidence of weapons when he felt the fanny pack, he opened all of the small zippered compartments to "check for weapons [and] find out if there was identification inside the fanny pack."[3] Once Officer Steckler opened the fanny pack, he found Corpany's driver's license. He also found two pharmaceutically folded pieces of paper in a small zippered compartment of the fanny pack. Officer Steckler told Corpany that he would have to test the contents of the folded paper for methamphetamine. Corpany replied, "you don't have to, its meth."

At that point, Officer Steckler placed Corpany under arrest. A backup officer, who had arrived at the scene, ordered Corpany to remove his jacket so that it could be searched. Corpany informed the police officer that there was a gun in his jacket. The officer removed a loaded .38 caliber Derringer pistol and a butterfly knife from the pocket of Corpany's jacket. The backup officer subsequently ran a warrants check that revealed Corpany was the subject of an outstanding warrant for failing to appear in court on a careless driving charge.[4]

---

**2.** Officer Steckler stated that he saw Corpany "ben[d] down. It appeared [that Corpany] stuffed something under the seat."

**3.** Evidence offered by the defendant at the suppression hearing contradicted Officer Steckler. Tammy Lea, one of the passengers in the car, testified that Officer Steckler opened the zippered compartments in the fanny pack without making an effort to determine the contents of the compartments.

**4.** After Corpany was arrested, Officer Steckler picked up the purse to search it. Before he opened it, Nicks' wife informed Officer Steckler that her identification was inside the purse and stated that "there are two baggies of marijuana inside the purse." After determining that there was indeed marijuana in the purse, Officer Steckler issued Nicks' wife a summons for possession of suspected marijuana. The constitutional validity of the search of the purse is not before us in this case.

## II

Corpany made a motion to suppress statements taken from him and all of the evidence seized. Corpany claimed that the search and the subsequent seizure of the evidence violated both the United States Constitution and the Colorado Constitution.[5] On January 25, 1993, the trial court conducted a pretrial suppression hearing at which Officer Steckler and other witnesses testified.

The trial court concluded, in resolving a conflict in the evidence, that there was no probable cause or reasonable grounds to suspect that the fanny pack contained methamphetamine or any other type of drug.[6] Based on its finding that Officer Steckler "did not detect what, in his opinion, would be any weapons in the fanny pack," the trial court also concluded that Officer Steckler could not search the fanny pack without consent.[7] Accordingly, the trial court granted the motion to suppress the methamphetamine. The trial court also suppressed Corpany's statements following the illegal search of the fanny pack as fruit of the poisonous tree.

■ In the absence of a clear statement that a suppression ruling is grounded on the Colorado Constitution, as opposed to the United States Constitution, we presume a trial court relied on federal constitutional law in reaching its decision. *People v. McKinstrey*, 852 P.2d 467, 469 (Colo.1993); *People v. Inman*, 765 P.2d 577, 578 (Colo. 1988).[8] Thus, the sole issue in this interlocutory appeal is whether the Fourth Amendment requires suppression of the evidence. The prosecution asserts that the search of the fanny pack was constitutionally permissible based on the reasonable suspicion that supported a protective search of the passenger compartment of the automobile. We disagree.

## III

### A

■ The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. *Minnesota v. Dickerson*, ⎯ U.S. ⎯, ⎯, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993); *McKinstrey*, 852 P.2d at 469. Warrantless searches and seizures are unreasonable, subject only to a few specifically established and well-delineated exceptions. *Dickerson*, ⎯ U.S. at ⎯, 113 S.Ct. at 2135. One exception was recognized in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which permits a warrantless search on the basis of reasonable suspicion, rather than probable cause. The prosecution relies on the exception delineated in *Terry* for searches based on reasonable suspicion to support its assertion that the search of Corpany's fanny pack was constitutionally permissible.

■ Under *Terry*, a police officer can briefly stop a suspicious person and make reasonable inquiries to confirm or dispel his suspicions. *Id.* at 30–31, 88 S.Ct. at 1884–85.[9] The officer may also conduct a pat-

---

**5.** Corpany concedes that he has no standing to question the validity of the traffic stop made by Officer Steckler or to contest the search of the automobile. He nevertheless challenges the search of the fanny pack and seeks suppression of the evidence seized from it. Corpany claims that he had a legitimate expectation of privacy in the fanny pack because he owned it.

The prosecution does not dispute that Corpany had a legitimate expectation of privacy in the fanny pack and the issue was not raised or ruled on in the trial court. Accordingly, we do not address the question of whether Corpany has a legitimate expectation of privacy such that he can challenge the search. *People v. McKinstrey*, 852 P.2d 467, 470 n. 4 (Colo.1993).

**6.** On appeal, the prosecution does not contend that the search was based on probable cause.

**7.** The prosecution does not claim that the search was based on the consent of Corpany or any of the other individuals in the automobile.

**8.** The legal argument before the trial court centered on whether the search was permissible under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and later cases addressing protective searches. The Colorado cases cited by the parties at the suppression hearing are all cases decided on Fourth Amendment grounds.

**9.** A *Terry* stop is also referred to as a *"Stone"* stop in Colorado. *See Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971).

down search of the individual to determine whether the person is carrying a weapon, as long as the officer is justified in believing that the person may be armed and presently dangerous. *Terry,* 392 U.S. at 24, 88 S.Ct. at 1881. *People v. Martinez,* 801 P.2d 542, 544–45 (Colo.1990) (stating that "[o]nly when the circumstances provide an officer with a reasonable and articulable suspicion that the person is armed and dangerous may the officer conduct a pat-down search for the purpose of his protection and others in the vicinity").[10]

▪ The purpose of the limited *Terry* search is not to discover evidence of crime, but to allow an officer to pursue an investigation without fear of violence. *Dickerson,* — U.S. at ——, 113 S.Ct. at 2136; *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972); *Martinez,* 801 P.2d at 544; *People v. Ratcliff,* 778 P.2d 1371, 1376 (Colo.1989). Accordingly, the scope and character of the *Terry* search must be reasonably related to its sole purpose—"the protection of the police officers and others nearby." *Ratcliff,* 778 P.2d at 1377 (quoting *Terry* ). If the protective search goes beyond what is necessary to determine whether a suspect is armed, it is no longer valid under *Terry* and the fruits of the search will be suppressed. *Dickerson,* — U.S. at ——, 113 S.Ct. at 2136; *Sibron v. New York,* 392 U.S. 40, 65–66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968).

In *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the Supreme Court upheld the search of the passenger compartment of an automobile and the subsequent seizure of contraband by applying the *Terry* exception for protective searches based on reasonable suspicion. *Long* held that in the context of a roadside encounter, police officers may conduct a protective search for weapons not only of the driver's person but also of the passenger compartment of the vehicle. *Id.* at 1049, 103 S.Ct. at 3480–81.

▪ However, the Court in *Long* "stress[ed] that [its] decision does not mean that the police may conduct automobile searches *whenever* they conduct an investigative stop." *Id.* at 1049 n. 14, 103 S.Ct. at 3481 n. 14. Instead, under *Long,* a police officer may conduct a search of the passenger compartment only if he possesses a reasonable belief based on specific and articulable facts that the suspect is dangerous and may gain immediate control of weapons. *Id.* at 1049, 103 S.Ct. at 3481.

Because the protective search of the automobile is justified solely by the danger that weapons stored in the vehicle could be used against officers or bystanders, it is "limited to those areas in which a weapon may be placed or hidden." *Id. Long* recognized, however:

> If, while conducting a legitimate *Terry* search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances.

*Id.* at 1050, 103 S.Ct. at 3481; *see also People v. Melgosa,* 753 P.2d 221, 225 (Colo. 1988).

We applied *Long* in *People v. Cagle,* 688 P.2d 718 (Colo.1984) (*Cagle I* ) and *People v. Cagle,* 751 P.2d 614 (Colo.), *appeal dismissed sub nom. Cagle v. Colorado,* 486 U.S. 1028, 108 S.Ct. 2009, 100 L.Ed.2d 597 (1988) (*Cagle II* ). In these cases, we held that a search for weapons accompanying an investigatory stop may be extended to the passenger compartment of an automobile under proper circumstances. We recognized that four conditions must be satisfied to justify a warrantless search of a passenger compartment of an automobile: (1) there must be an articulable and specific

---

10. We have interpreted *Terry* to impose three conditions before a person may be subjected to an investigatory stop or a limited frisk: (1) there must be an articulable and specific basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to occur; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose. *Martinez,* 801 P.2d at 544; *People v. Ratcliff,* 778 P.2d 1371, 1376 (Colo.1989).

basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to occur; (2) the purpose of the intrusion must be reasonable; (3) the scope and character of the intrusion must be reasonably related to its purpose; and (4) there must be a reasonable belief based on specific and articulable facts which reasonably cause the officer to believe that the suspect is armed and dangerous and may gain immediate control of weapons. *Cagle II*, 751 P.2d at 616–17; *see also Melgosa*, 753 P.2d at 226 (applying *Long*).

## B

Within the framework of the foregoing principles, we address the issue of whether the evidence seized from the fanny pack was properly suppressed under the Fourth Amendment. The question in this case is whether the four conditions required for a protective search of a passenger compartment of an automobile were satisfied. Because we conclude that the third condition was not satisfied, we affirm the trial court's suppression order.

█ In this case, it is undisputed that the investigatory stop and temporary detention of the individuals in the automobile was constitutionally justified. Based on Officer Steckler's observations of the vehicle's failure to stay in a single lane of traffic, there was an articulable and specific basis for the stop. *Cagle II*, 751 P.2d at 616; *see Melgosa*, 753 P.2d at 226.

█ We also conclude that the second and fourth conditions established in our prior case law were satisfied. Under the specific circumstances of this case, Officer Steckler had a reasonable belief based on specific and articulable facts that the passengers of the automobile were armed and dangerous. As he pulled the vehicle containing the four individuals over, Officer Steckler saw two passengers lean over and place something below the front seat. This action was an obvious response to the police encounter and convinced Officer Steckler to call for a backup unit. *Melgosa*, 753 P.2d at 227. Under the circumstances in this case, we conclude that it was reasonable for Officer Steckler to conclude that the passengers were potentially armed and dangerous. *Id.; Cagle II*, 751 P.2d at 618; *People v. Burley*, 185 Colo. 224, 228, 523 P.2d 981, 983 (1974) (Erickson, J., concurring in the result); *see also Long*, 463 U.S. at 1031, 103 S.Ct. at 3469. We likewise conclude that the purpose of the search of the passenger compartment of the automobile for weapons in order to ensure Officer Steckler's safety was reasonable.

█ The controlling issue in this case therefore is whether the scope of the search was reasonably related to the purpose of ensuring Officer Steckler's safety. In ruling on the motion to suppress, the trial court did not specifically state whether the scope and character of the intrusion were reasonably related to its purpose. However, the trial court determined that Officer Steckler could not search the fanny pack because he had, in effect, no reasonable concern for his safety after the initial pat down of the fanny pack. The testimony of Officer Steckler indicates he had no reasonable concern for his safety and therefore the search of the fanny pack exceeded the constitutionally permissible bounds of the limited protective search of the passenger compartment of an automobile.

*Long* permits a police officer to conduct a search of the passenger compartment of an automobile for weapons in "areas in which a weapon may be placed or hidden." *Long*, 463 U.S. at 1049, 103 S.Ct. at 3481.[11] *Long*, however, does not authorize a police officer to automatically open all containers that are discovered in the passenger compartment during a protective search. Although *Long* limits searches to locations

---

**11.** Corpany does not assert that Officer Steckler's search of the passenger compartment of the automobile was impermissible. *Cf. Cagle I*, 688 P.2d at 723 (passenger's furtive conduct in bending down and placing the items under the passenger seat after police officer turned on his overhead lights would have warranted a reasonable belief that the passengers had a weapon beneath the seat, thus justifying a search for weapons in that area); *Burley*, 185 Colo. at 226, 523 P.2d at 982 (same).

where a weapon may be placed or hidden, it did not determine whether the limitation applies to the search of containers that the officers subsequently discover inside the passenger compartment.[12] *Long* similarly did not consider whether a pat-down search of a soft container located in the passenger compartment, or the discovery of a hard object within such a container, are prerequisites to a search of the container. *See* 3 Wayne R. LaFave, *Search and Seizure* § 9.4(e), at 536 (2d ed. 1987).

In this case, Officer Steckler felt the fanny pack for weapons as part of the initial search. Such a limited pat-down search is constitutionally permissible to ensure a police officer's safety. The safety concerns that justified the initiation of the search of the passenger compartment, however, did not justify a further search of the inside compartments of the closed soft container once the initial pat down suggested that the fanny pack did not contain any weapons. *Cf. Martinez*, 801 P.2d at 545 (concluding that opening the pouch and examining its contents during a *Terry* search exceeded the limits of a permissible protective search); *Ratcliff*, 778 P.2d at 1380–81 (stating that where an object recovered during a *Terry* search is a closed container,

a police officer may not open the container to examine its contents unless he can point to specific and articulable facts supportive of a reasonable suspicion that the closed container poses a danger to himself or others nearby).[13]

Here, the opening of the fanny pack and search of its compartments, in the absence of evidence to support a reasonable suspicion that the contents posed a threat to the safety of Officer Steckler, constituted an impermissible exploratory search beyond the scope permitted by *Long*. Officer Steckler's exploration into the fanny pack after he was unable to detect any weapons during the pat-down search was unrelated to the sole justification for the protective search—protection of officers and others nearby. As such, it amounted to the type of evidentiary search that *Terry* expressly refused to authorize, and *Long* specifically condemned. *Dickerson*, ── U.S. at ──, 113 S.Ct. at 2139; *see also Ratcliff*, 778 P.2d at 1381 (stating that permitting an officer to open and examine the contents of a sealed container discovered during a valid *Terry* search, where the officer had no basis for suspecting that the container posed a danger, would totally eviscerate constitutional limitations).[14]

---

12. The majority in *Long* merely stated that "[t]he trial court determined that the leather pouch containing marihuana could have contained a weapon." *Long*, 463 U.S. at 1050–51, 103 S.Ct. at 3481. In fact, the leather pouch was not opened in *Long* because the police officer "saw an open pouch on the front seat, and upon flashing his light on the pouch, determined that it contained what appeared to be marihuana." *Id.* at 1036, 103 S.Ct. at 3474. As such, *Long* did not present the container search question and that seizure can be justified as a plain-view seizure during a valid *Terry* search. *Minnesota v. Dickerson*, ── U.S. ──, ──, 113 S.Ct. 2130, 2136, 124 L.Ed.2d 334 (1993) (stating that *Long* was justified by reference to the plain-view doctrine); *see generally* 3 Wayne R. LaFave, *Search and Seizure* § 9.4(e), at 536 (2d ed. 1987); 1 William E. Ringel, *Searches and Seizures Arrests and Confessions* § 13.8 (1980).

Similarly, in *Burley*, we upheld the seizure of marijuana packages that the officers saw in "a partially opened bag protruding from beneath the driver's seat." *Burley*, 185 Colo. at 226, 523 P.2d at 982. *Burley* concluded that the seizure of the drugs fell within the scope of the protective search of the passenger compartment. Because the bag was not opened and searched in

*Burley*, it also did not squarely present the container search question.

13. If, however, during the course of 'a valid protective search an officer felt a hard object that he reasonably believed was a weapon, a search of the soft container would be warranted. *See Commonwealth v. Sumerlin*, 393 Mass. 127, 469 N.E.2d 826, 828–29 (1984) (upholding search as consistent with *Long* where police officer found a bag in the passenger compartment and opened it after feeling a weapon during the pat-down search of the bag), *cert. denied sub nom., Sumerlin v. Massachusetts*, 469 U.S. 1193, 105 S.Ct. 972, 83 L.Ed.2d 975 (1985); *cf. Dickerson*, ── U.S. at ──, 113 S.Ct. at 2137 (determining that objects detected by police officer through sense of touch during the course of a valid *Terry* search may be seized without a warrant).

14. Corpany's failure to provide identification did not justify the search of the fanny pack. The purpose of the limited search authorized by *Long* is not to discover evidence of crime or to search for identification, but only to allow an officer to pursue the investigation without fear of violence. *Dickerson*, at ──, 113 S.Ct. at

## C

Evidence discovered on the basis of information obtained through an unlawful search or seizure must be suppressed as fruit of the poisonous tree. The primary evidence which was obtained in the search is the poisonous tree and the derivative evidence is its fruit. *See generally* 4 Wayne R. LaFave, *Search and Seizure* § 11.4 (1980); 1 William E. Ringel, *Searches and Seizures Arrests and Confessions* § 3.2 (1980).

In this case, Corpany's admissions following the seizure of the methamphetamine would not have been made if the illegal search of the fanny pack had not occurred. In the absence of the unlawful search of the fanny pack, the .38 caliber Derringer pistol and the butterfly knife similarly would not have been discovered. Because we conclude that the search of the fanny pack was unconstitutional, we agree with the trial court that Corpany's statements were properly suppressed as fruit of the poisonous tree.

## IV

Accordingly, we affirm the suppression order entered by the trial court.

2136; *Adams,* 407 U.S. at 146, 92 S.Ct. at 1923; *see also Ratcliff,* 778 P.2d at 1377 (stating that "the sole justification for a protective search is the protection of police officers and others nearby").