The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Darin WESTON, Defendant–Appellee.

No. 93SA215.

Supreme Court of Colorado,
En Banc.

March 14, 1994.

Robert S. Grant, Dist. Atty., Seventeenth Judicial Dist., Michael J. Milne, Sr. Deputy Dist. Atty., Victoria A. Tucker, Intern Deputy Dist. Atty., Brighton, for plaintiff-appellant.

David F. Vela, State Public Defender, Peter W. Sadick, Deputy State Public Defender, Brighton, for defendant-appellee.

Justice MULLARKEY delivered the Opinion of the Court.

In this interlocutory appeal, taken pursuant to C.A.R. 4.1 and section 16–12–102(2), 8A C.R.S. (1986 & 1993 Supp.), the People seek reversal of an order of the Adams County District Court suppressing evidence seized from the passenger compartment of an automobile during an investigatory stop and detention of the occupants of the vehicle. We conclude that, under the specific circumstances of this case, the police officer had a reasonable basis for conducting a protective search of the passenger compartment of the vehicle in the interest of her own safety. Accordingly, we reverse the order of suppression and remand the case to the district court for further proceedings.

## I

At approximately 10:45 p.m. on September 18, 1992, two officers of the Aurora Police Department advised on-duty patrol officers to be alert for a dark-colored (possibly brown), older-model Datsun. The vehicle's occupants, described as three black males, were suspected of being involved in a stabbing that had just occurred in the 1600 block of Beeler Street.

One hour and fifteen minutes later, at approximately 12:01 a.m. on September 19, 1992, Officer Shannon Lucy of the Aurora Police Department was on routine patrol in the 1600 block of Florence Street when she observed a brown vehicle which looked like a Datsun. The vehicle, owned and driven by the defendant, Darin Weston, was occupied by three black males travelling westbound on East 16th Avenue. This area is approximately six to eight blocks from where the stabbing had occurred.

Based on the information previously aired by the officers who were at the scene of the stabbing, Lucy decided to stop the vehicle. Before stopping the vehicle, however, she requested backup officers for reasons of personal safety. After two officers arrived to cover Lucy, she stopped the vehicle and asked for identification from Weston and the two passengers. She then asked each person to exit the vehicle one at a time and conducted a pat-down search for weapons.

While the occupants were being observed by the backup officers, Lucy searched the vehicle for weapons. At the suppression hearing, Lucy testified that it was general procedure to search a car for weapons "if I have reason to be concerned that there are weapons in the car." According to Lucy, "because of the length of time that it takes to get clearances and IDs on people, ... I'll search the vehicle for weapons and for my own safety in those circumstances; and then they are allowed to be seated back in the car if everything's okay." Lucy further explained that she would search a vehicle for weapons as a "courtesy" to the vehicle's occupants prior to contacting the police dispatcher for clearances. "[I]t keeps them from having to stand out on the sidewalk for however long this thing takes to get through."

While inspecting the passenger compartment of Weston's car, Lucy searched a plastic map pocket approximately three inches wide and six to eight inches deep on the driver's side door. Lucy described the map pocket as big enough to "get your hand all the way in" and big enough to hold a gun. Lucy found two baggies towards the bottom of the map pocket, one of which contained crack cocaine and the other marihuana. Weston was charged with the unlawful possession of a schedule II controlled substance (cocaine)[1] and with the unlawful possession of less than one ounce of marihuana.[2]

On June 3, 1993, Weston filed a motion to suppress evidence and statements which the officers had obtained at the time of his ar-

---

1. § 18–18–405, 8B C.R.S. (1992 Supp.).

2. § 18–18–106(1), 8B C.R.S. (1986).

rest. In his motion, Weston alleged that the evidence seized was the product of an unconstitutional stop and an unconstitutional search and seizure under the Fourth Amendment of the United States Constitution and Article II, Section 7 of the Colorado Constitution. At the hearing on Weston's motion, the district court ruled that Lucy had a reasonable and articulable suspicion which justified the investigatory stop of Weston's car. However, the district court concluded that Lucy exceeded the permissible scope of the stop when she searched the car because the search was "based upon a convenience of the [vehicle's occupants] ... so that they would not have to remain out in the cold." The district court then suppressed the evidence of the crack cocaine and the marihuana from use at trial.

## II

■ A police officer having less than probable cause for arrest may conduct an investigatory stop and a limited search of the person for weapons provided that the following requirements are met: (1) there must be an articulable and specific basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to take place; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose. *People v. Martinez*, 801 P.2d 542, 544 (Colo.1990); *People v. Ratcliff*, 778 P.2d 1371, 1376 (Colo.1989); *People v. Cagle*, 688 P.2d 718, 721 (Colo.1984) (*Cagle I*); *People v. Lewis*, 659 P.2d 676, 681 (Colo.1983); *People v. Tate*, 657 P.2d 955, 958 (Colo.1983).

■ During the course of an investigatory stop, a police officer also may search those areas of the passenger compartment in which a weapon may be placed or hidden. *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3480–81, 77 L.Ed.2d 1201 (1983); *People v. Melgosa*, 753 P.2d 221, 225 (Colo.1988). Such a limited intrusion is justified by the particular hazards confronting a police officer in roadside encounters with drivers and passengers of automobiles. Even though the officer may have physical control of the suspect, the suspect still can break away from police control and retrieve the weapon from

his automobile, or may have access to weapons if permitted to return to his car before the investigatory stop is over. *Long*, 463 U.S. at 1051–52, 103 S.Ct. at 3481–82; *Melgosa*, 753 P.2d at 226.

■ However, a valid stop of a vehicle based on reasonable suspicion does not mean that the police automatically may search the passenger compartment for weapons. *Long*, 463 U.S. at 1049 n. 14, 103 S.Ct. at 3481 n. 14; *Martinez*, 801 P.2d at 544; *Ratcliff*, 778 P.2d at 1376. Instead, a police officer may conduct a search of the passenger compartment only if he or she possesses a reasonable belief based on specific and articulable facts that the suspect is dangerous and may gain immediate control of weapons. *Long*, 463 U.S. at 1049, 103 S.Ct. at 3480–81; *People v. Corpany*, 859 P.2d 865, 869 (Colo.1993); *People v. Cagle*, 751 P.2d 614, 617 (Colo.), *appeal dismissed sub nom. Cagle v. Colorado*, 486 U.S. 1028, 108 S.Ct. 2009, 100 L.Ed.2d 597 (1988) (*Cagle II*). *See also* § 16–3–103(2), 8A C.R.S. (1986) (providing that officers may conduct a pat-down search if they reasonably suspect that their personal safety requires it).

■ If there is a reasonable basis to suspect that the person might be armed and dangerous, the search still must be limited in scope and confined to areas in which a weapon might be placed or hidden. *Corpany*, 859 P.2d at 869; *Martinez*, 801 P.2d at 544; *Ratcliff*, 778 P.2d at 1377. However, the officer conducting the search is permitted to make a cursory examination of any object discovered during the search for the purpose of determining whether the object is a weapon. *Martinez*, 801 P.2d at 544; *Ratcliff*, 778 P.2d at 1377; *Melgosa*, 753 P.2d at 228. If the officer has probable cause to believe that the object is incriminating, he or she then may lawfully seize the object without a search warrant under the "plain view" doctrine. *Melgosa*, 753 P.2d at 226. *See also Long*, 463 U.S. at 1050, 103 S.Ct. at 3481 (stating if an officer discovers contraband other than weapons during a legitimate protective search, "he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression

in such circumstances"); *Texas v. Brown,* 460 U.S. 730, 739, 103 S.Ct. 1535, 1541–42, 75 L.Ed.2d 502 (1983) (plurality opinion).

## III

With these principles in mind, we consider whether the conditions required for a protective search of the passenger compartment of an automobile were satisfied in this case.

### A

■ The first condition for a valid investigatory stop and a protective search for weapons is the existence of a specific and articulable basis in fact for suspecting that the person subjected to the stop has engaged in, is presently engaging in, or is about to commit a criminal act. *E.g., Ratcliff,* 778 P.2d at 1378; *People v. Hughes,* 767 P.2d 1201, 1203 (Colo.1989). Weston argues that the suppression order should be affirmed since the police did not have a reasonable and articulable suspicion that he may have been involved in criminal activity when they stopped his car. We decline to address this question in an interlocutory appeal under C.A.R. 4.1.

■ We have often stated that C.A.R. 4.1 limits the types of rulings from which interlocutory appeals can be taken and cannot be employed to obtain pre-trial review of issues not covered by the rule. *See, e.g., People v. Dailey,* 639 P.2d 1068, 1076 n. 8 (Colo.1982). For our purposes, this means that a ruling granting a defendant's pre-trial motion to suppress evidence is subject to interlocutory appeal by the state. C.A.R. 4.1 (stating that "[t]he state may file an interlocutory appeal in the supreme court from a ruling of the district court granting a motion ... made in advance of trial by the defendant for return of property and to suppress evidence").

■ A defendant, however, is not entitled to interlocutory relief under C.A.R. 4.1.[3]

*E.g., Cagle I,* 688 P.2d at 721 n. 10; *People v. Barton,* 673 P.2d 1005, 1006 n. 1 (Colo.1984); *People v. Weeams,* 665 P.2d 619, 623 (Colo.1983); *People v. Traubert,* 199 Colo. 322, 330, 608 P.2d 342, 347 (1980). In other words, if the district court resolves a suppression issue against the defendant, we have no jurisdiction to address it in an interlocutory appeal. *People v. Griffin,* 727 P.2d 55, 57 n. 4 (Colo.1986); *People v. Oates,* 698 P.2d 811, 815 n. 5 (Colo.1985).

In this case, the district court determined that the police had a reasonable and articulable basis for stopping Weston. Because the district court resolved this issue in favor of the prosecution, we cannot consider the issue in an interlocutory appeal pursuant to C.A.R. 4.1. Therefore, we must assume for purposes of this appeal that the initial stop of Weston was proper.

### B

■ Having assumed that the officer validly stopped Weston, we next must consider whether the purpose of the search was reasonable. As previously stated, police officers may not conduct warrantless searches of a suspect's car whenever they conduct an investigatory stop. *E.g., Long,* 463 U.S. at 1049 n. 14, 103 S.Ct. at 3481 n. 14; *Ratcliff,* 778 P.2d at 1376. Rather, a search conducted in conjunction with an investigatory stop is permissible solely for the purpose of discovering weapons. *Long,* 463 U.S. at 1049, 103 S.Ct. at 3480–81; *Sibron v. New York,* 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968); *Terry v. Ohio,* 392 U.S. 1, 26, 88 S.Ct. 1868, 1882–83, 20 L.Ed.2d 889 (1968); *Cagle I,* 688 P.2d at 722. In addition, a protective search is permitted only when the officer has a reason to believe that the suspect might be armed and dangerous. *Martinez,* 801 P.2d at 544. This is because the only justification for this type of search is the protection of the officer and others pres-

---

3. In *People v. Traubert,* 199 Colo. 322, 608 P.2d 342 (1980), we held that C.A.R. 4.1 did not deny a defendant's equal protection rights by allowing only the prosecution to enter an interlocutory appeal.

> [T]he prosecution and the defendant are [not] similarly situated in a criminal trial. Since the prosecution is precluded from placing a defen-

> dant in double jeopardy after a verdict has been rendered, its only meaningful avenue of appeal must be found in a pre-judgment proceeding. The provisions of C.A.R. 4.1 do not interfere with the defendant's rights to appeal his conviction after a verdict has been reached,
>
> ...
>
> *Id.* at 330, 608 P.2d at 348.

ent in the vicinity, as opposed to the preservation of evidence or the search for probable cause. *Terry,* 392 U.S. at 29, 88 S.Ct. at 1883–84; *Martinez,* 801 P.2d at 544.

The district court concluded that Lucy's search of Weston's automobile was invalid because "there's been no showing of the necessity to come about or enter the motor vehicle of Mr. Weston." According to the district court, the purpose of the search was not the officer's safety, but the convenience of the occupants "so that they would not have to remain out in the cold" while the officer obtained clearances.

■ Although we must defer to a district court's findings of historical fact, an ultimate conclusion of constitutional law that is inconsistent with or unsupported by evidentiary findings, or the application of an erroneous legal standard to the facts of the case, is subject to correction by a reviewing court. *People v. Rahming,* 795 P.2d 1338, 1341 (Colo.1990); *People v. Quezada,* 731 P.2d 730, 732–33 (Colo.1987). In our opinion, the district court's conclusion concerning Lucy's purpose in performing the search is not supported by the record.

■ In order to ascertain the purpose of an intrusion, a court may consider the officer's declarations and other evidence of the officer's intention at the time of the search. *Cagle I,* 688 P.2d at 722. However, an officer's subjective intent is not critical to a resolution of this issue. *Ratcliff,* 778 P.2d at 1377; *People v. Lagrutta,* 775 P.2d 576, 580 (Colo.1989); *Hughes,* 767 P.2d at 1205; *Tate,* 657 P.2d at 960 (Lohr, J., concurring). What is determinative is whether the purpose of the intrusion was objectively reasonable in light of the circumstances confronting the officer at the time of the search. *Ratcliff,* 778 P.2d at 1379.

■ In this case, Officer Lucy's concern for her own safety was adequately supported by her testimony at the suppression hearing. Lucy testified that she searched Weston's car to find weapons, and the events surrounding

the search support the view that the search had a legitimate protective purpose. For example, Lucy called a backup to the scene in order to protect her safety, and she waited for backup to arrive before searching Weston or his car. *See Cagle II,* 751 P.2d at 618. Once the other officers arrived, Lucy asked the occupants of Weston's car to exit the vehicle one at a time and conducted a patdown search of each person for weapons. In addition, the occupants were watched by the backup officers while Lucy searched the car. Therefore, we do not have a situation where a single officer turns her back on three possibly armed suspects in order to search the passenger compartment of a car, thus eviscerating any claim that the search was undertaken for reasons of personal safety. *See Cagle I,* 688 P.2d at 722.

■ Lucy did search the vehicle as a courtesy to the occupants before completing her investigation. However, this does not mean, as the district court believed, that the search itself lacked a valid protective purpose. A limited intrusion will be upheld on the basis of its objective reasonableness even though the officer may have harbored a subjective intent to engage in a more extensive intrusion than was warranted under the circumstances. *Ratcliff,* 778 P.2d at 1377. Moreover, the fact that Lucy would not allow the occupants to re-enter the vehicle without a search for weapons further demonstrates that she was concerned for her safety. After all, if Lucy had allowed the occupants to return to the car prior to the search, then the occupants would have had access to any weapons inside. *See Long,* 463 U.S. at 1052, 103 S.Ct. at 3482.

More importantly, the district court found that Lucy reasonably suspected that the occupants of Weston's vehicle had been involved in a stabbing which took place in the same area a short time earlier. Since a stabbing is a violent crime involving a weapon, surely it was reasonable for Lucy to believe that she might be dealing with potentially armed and dangerous persons.[4] *See*

---

4. In his Answer Brief before this court, Weston concedes that a protective search of his car was "certainly valid" if reasonable suspicion existed to believe that the occupants were involved in the

earlier stabbing and were still armed at the time of the search. As discussed *supra* in part III A, we must assume for purposes of this appeal that Officer Lucy had a reasonable and articulable

*Tate,* 657 P.2d at 959 (Because the officer reasonably suspected that the defendant might be engaged in criminal conduct, it was reasonable to believe that he might be dealing with an armed and dangerous person. Therefore, a protective search for weapons was appropriate.); *People v. Martineau,* 185 Colo. 194, 198, 523 P.2d 126, 128 (1974) (same). *See also Lewis,* 659 P.2d at 682 (stating police officers may search for a weapon in the area of the driver's seat if they have reasonable suspicion to stop and temporarily detain the driver and are cautioned beforehand that he may be armed). Under these circumstances, we disagree with the district court and hold that Officer Lucy was justified in conducting a limited search of Weston's car for weapons.

## C

The final question presented is whether the scope and character of the search were reasonably related to the purpose of ensuring Lucy's safety. In this case, the search consisted of Officer Lucy's inspection of the open map pocket located on the driver's side door and her discovery[5] of two transparent baggies containing crack cocaine and marihuana. Although the district court did not specifically discuss this issue in ruling on the motion to suppress, we are satisfied that Lucy's examination of the map pocket and the contents of the baggies did not exceed the constitutionally permissible limits of a protective search for a weapon.

▇▇▇▇ Because the protective search of an automobile is justified solely by the need to protect officers and others present, it is limited to those areas in which a weapon may be placed or hidden. *Corpany,* 859 P.2d at 869 (quoting *Long,* 463 U.S. at 1049, 103

S.Ct. at 3481). In this case, the undisputed testimony of Officer Lucy establishes that the open map pocket in Weston's car was just such an area. Lucy testified that the map pocket was six to eight inches deep and approximately three inches wide. She further described the pocket as big enough to "get your hand all the way in" and big enough to hold a gun. Moreover, the map pocket was located in the driver's side door, and in the past we have held that "a contemporaneous, cursory examination for a weapon in the area of the driver's seat is reasonably related in scope and character to ensuring the officers' safety during the period of detention." *Lewis,* 659 P.2d at 682.

Weston does not contest Lucy's search of the map pocket, but argues that Lucy had no right to remove the baggies from the map pocket unless she reasonably suspected that they contained a weapon. According to Weston, it was not objectively reasonable for Lucy to believe that the baggie of crack cocaine contained a weapon since the baggie and its contents weighed only 2.2 grams. We disagree with Weston's analysis.

▇▇▇▇ Officers conducting a search are permitted to make a cursory examination of any objects discovered during the search of the passenger compartment in order to assure themselves that the objects are not dangerous. *Martinez,* 801 P.2d at 544; *Ratcliff,* 778 P.2d at 1377; *Melgosa,* 753 P.2d at 228. This does not mean, however, that the police automatically may open all containers discovered in the passenger compartment during a protective search. *Corpany,* 859 P.2d at 870. When the object recovered is a closed container, the officer may open the container to examine its contents only if she can point to specific and articulable facts supporting a

---

basis for stopping Weston. In addition, even though no weapons were found in the initial pat-down of the vehicle's occupants, there was nothing in Lucy's initial confrontation with the occupants to dispel her fears that they could be armed and dangerous. *See Terry,* 392 U.S. at 30, 88 S.Ct. at 1884–85. On the contrary, since a weapon was not found on Weston's person, it was logical for Lucy to reason that the weapon was probably in the passenger compartment of the automobile. This is especially true since the persons involved in the stabbing fled the scene of the crime in a car resembling Weston's car.

5. It is unclear from the record how Lucy discovered the two baggies; i.e., whether she looked into the map pocket with a flashlight and saw the baggies, whether she felt in the map pocket and simply pulled out the baggies, or whether she felt the baggies and suspected that they contained drugs before removing them from the map pocket. For purposes of this appeal, we will assume (as Weston does) that Lucy pulled the baggies out of the map pocket without first identifying their contents.

reasonable suspicion that the container poses a danger to the officer and others nearby. *Id.* at 871; *Martinez,* 801 P.2d at 545; *Ratcliff,* 778 P.2d at 1380. However, "when a container is 'not closed,' or 'transparent,' ... the container supports no reasonable expectation of privacy and the contents can be said to be in plain view." *United States v. Donnes,* 947 F.2d 1430, 1437 (10th Cir.1991). *See also People v. Casias,* 193 Colo. 66, 71 n. 4, 563 P.2d 926, 930 n. 4 (1977); *People v. Nefzger,* 173 Colo. 199, 201, 476 P.2d 995, 996 (1970) (holding plastic bag of marihuana to be evidence in plain view).

■ In maintaining that the prosecutor must establish that Lucy had a reasonable suspicion that the baggies contained a weapon, Weston in essence is arguing that the map pocket was a "closed container." However, this view is contrary to the evidence presented at the suppression hearing. As Officer Lucy testified, the map pocket had an opening approximately three inches wide, and thus was not a "closed container." Therefore, Lucy lawfully could examine the contents of the pocket without a warrant. *Cf. Cagle I,* 688 P.2d at 723 (holding officer could pull out a shirt crammed under a passenger's seat while conducting a protective search for weapons).

Accordingly, the suppression order is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

ERICKSON, J., dissents, and SCOTT, J., joins in the dissent.

LOHR, J., does not participate.

**Justice ERICKSON dissenting:**

The trial court found that the purpose and scope of the search of the defendant's automobile was unreasonable under the totality of the circumstances.[1] Based on these findings, the trial court suppressed the evidence seized from the defendant's vehicle.

The majority, based on its interpretation of the record, holds that the search of the defendant's car was justified and that the scope of the search was reasonably related to the purpose of ensuring the safety of the police officer who stopped the defendant's vehicle. As a result of this holding, the majority overrules the trial court and reverses the trial court's order suppressing the evidence and statements that resulted from the search. In my opinion, the record supports the trial court's finding that the search was unreasonable. Accordingly, I dissent.

**I**

On September 18, 1992, at approximately 10:45 p.m., Officer Shannon Lucy (Officer Lucy) of the Aurora Police Department was on routine patrol when she received a radio communication from fellow officers who were investigating a stabbing. The radio communication advised police officers patrolling in the area of the stabbing to be on the lookout for an older model Datsun automobile, dark in color, possibly brown, with license plates containing the letters "B," "C," or "J." The radio report stated that the police officers investigating the stabbing believed that the three black men in the Datsun were involved in the stabbing that occurred at the 1600 block of Beeler Street. The Datsun was seen proceeding north on Beeler and then east on 17th Avenue immediately after the

---

1. The trial court specifically stated:
   [T]he Court would find that the reason for the search was based upon a convenience of the witnesses, if you will, so that they would not have to remain out in the cold.
   That was the officer's testimony, and this Court would find that the scope of the search, without either a lawful arrest or further establishment of probable cause, was unreasonable under the totality of the circumstances; and that there's been no showing of the necessity to come about or enter the motor vehicle of Mr. Weston.

   The Court will find that the stop was appropriate; that the scope of the intrusion, vis-a-vis the search, was not reasonable under the totality of the circumstances test....
   Although the court found that there was a reasonable and articulable suspicion which justified the investigatory stop of Weston's car, I agree with the majority that this issue is not reviewable under C.A.R. 4.1. Maj. op. at 1297; *see also People v. Weeams,* 665 P.2d 619, 623 (Colo.1983).

stabbing. The three black men in the Datsun were not described in the report.

Approximately one hour and fifteen minutes after the information was broadcast, Officer Lucy saw a 1984 Nissan 200SX automobile occupied by three black males. The car was traveling west on Colfax Avenue near Florence Street. The location of the Nissan was south of where the reported stabbing occurred and it was traveling toward, rather than away from, the scene of the attack. Officer Lucy followed the Nissan for approximately four blocks. She later testified that she did not remember if the name "Datsun" was printed anywhere on the Nissan but did recall that the neither the letter "B," "C," nor "J" was on the license plates. Officer Lucy testified that the driver of the Nissan had not violated any traffic laws. Although no traffic infractions were committed, and despite the discrepancies between the information in the radio alert and her observations, Officer Lucy stopped the Nissan.

Two backup officers were called to assist Officer Lucy. Officer Lucy requested identification from all three individuals in the Nissan. The driver of the automobile, Darin Weston (Weston), produced personal identification and registration documents for the automobile. The two passengers also produced identification. The automobile registration and the identification provided by each of the three individuals was in order. Nevertheless, Officer Lucy ordered Weston and the passengers to exit the vehicle and then conducted a pat-down weapons search on each of the individuals. No weapons were found. Officer Lucy later testified that none of the men appeared to have been involved in a stabbing or any other kind of fight. She saw no signs of blood and the men's clothing was not disheveled or torn.

After completing the weapons search, Officer Lucy searched Weston's automobile. While searching the inside of the automobile, she reached inside a map pocket on the driver's side door. She described the pocket as six to eight inches deep and less than three inches wide at the top. The search of the pocket resulted in the discovery of two small glassine bags, one of which Officer Lucy believed contained cocaine and the other marijuana.

No weapons were found during the search of the car and neither Weston nor his passengers were ever identified as having any involvement in the alleged stabbing. Weston was charged with unlawful possession of a controlled substance, cocaine,[2] and unlawful possession of less than one ounce of marijuana.[3] Weston filed a motion to suppress the evidence and statements which were obtained as a result of the stop. The trial court heard testimony from the arresting officer and, at the conclusion of the hearing on Weston's motion, found that the search of the Nissan was unconstitutional. Based on this finding, the court ordered the suppression of the cocaine, the marijuana, and the statements made by the defendant.

## II

I agree that a police officer may conduct an investigatory stop and a limited search of a person for weapons providing that three requirements are met: (1) there must be an articulable and specific basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to take place; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose. *People v. Martinez*, 801 P.2d 542, 544 (Colo.1990). During an investigatory stop, a police officer may search the areas of the passenger compartment of an automobile where a weapon could be placed. *People v. Melgosa*, 753 P.2d 221, 225 (Colo.1988). In deciding whether an officer possessed reasonable suspicion, or whether a particular intrusion is reasonable, a court must consider the totality of the circumstances. *People v. Bell*, 698 P.2d 269, 272 (Colo.1985).

Officer Lucy testified that three factors led her to search the vehicle: (1) Weston's vehicle was in a high-crime area; (2) one of the passengers was dressed "gang-style"; and (3) her belief that the suspect vehicle was involved in the stabbing.

2. § 18–18–405, 8B C.R.S. (1993 Supp.).

3. § 18–18–106(1), 8B C.R.S. (1986).

**1302**

The fact that a suspect is in a high-crime area, without more, is not sufficient to justify a reasonable suspicion. *Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979). In *People v. Rahming,* 795 P.2d 1338, 1340 (Colo.1990), a police officer detained three young males on the basis that one of the juveniles was dressed like a member of a gang called the "crips," i.e., he was wearing a jacket with the Los Angeles Raiders emblem on the back, a blue hat, black jeans, and British Knight tennis shoes. Even though the three youths were seen near an apartment where rival gang leaders lived, and the officer who stopped the three juveniles had recently arrested individuals who lived in the apartment for a drive-by shooting and assault on a crip gang member, we found that the circumstances did not create a reasonable suspicion that criminal activity was about to occur. *Id.* at 1341–43.

Officer Lucy stated that one of the reasons she searched the car was the fact that a passenger in the car was dressed "gang-style." She did not elaborate regarding the type of clothing that fits this description. Officer Lucy also stated that the stop occurred in an area of gang and drug activity. The passenger's clothing and the fact that the Nissan was stopped in an area of gang and drug activity are insufficient to warrant a reasonable suspicion that Weston's vehicle contained a weapon. *See United States v. Daniel,* 804 F.Supp. 1330, 1335 n. 10 (D.Nev. 1992) (recognizing that *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny, require some degree of particularized suspicion beyond gang membership).

The information regarding the vehicle does not provide the missing quantum of evidence sufficient to justify a reasonable belief that a weapon would be found in the Nissan. The investigating officers described the automobile that fled from the scene of the stabbing as an older model, dark, possibly brown, Datsun with the letters "B," "C," and "J" on the license plates. Weston's car did not match the description. His car was a recent model Nissan and not one of the letters on Weston's license plates matched those of the suspect vehicle. Although Weston's vehicle was spotted within six to eight blocks of the crime scene, an hour and fifteen minutes had elapsed and Weston was proceeding toward the scene of the crime, not in the probable direction of flight which was broadcast by the dispatcher. Given the substantial time lapse and the Nissan's direction of travel, the suspicious effect of being near the crime scene is negligible.

In addition to the lack of evidence supporting the officer's three reasons for searching the automobile, there is other evidence which supports the trial court's suppression order. The three men in the car provided personal identification and Weston produced registration documents for the Nissan. All three men were frisked and nothing was discovered on their persons. Officer Lucy testified that she observed no blood stains or any physical evidence that would indicate that any of the men were involved in a stabbing. Officer Lucy did not indicate that the men acted nervously or suspiciously or that the men gave unsatisfactory answers to any of her question or failed to comply with all of her requests.

When Officer Lucy was asked on direct examination why she searched the interior of the vehicle she testified: "Normally I will do that and it just basically comes down to courtesy to people I've stopped. We did not have phones in our car at that time and it takes awhile to clear people via the radio." On cross-examination Lucy reiterated that she searched the automobile as a courtesy to Weston and the two passengers stating that "it keeps them from having to stand out on the sidewalk for however long this thing takes to get through." The majority notes that the district court found "the purpose of the search was not the officer's safety, but the convenience of the occupants 'so that they would not have to remain out in the cold' while the officer obtained clearances." Maj. op. at 1297–1298.

Despite the evidence which supports the trial court's findings, the majority relies on Officer Lucy's testimony about her concerns for her safety and overrules the trial court's findings. The majority correctly states that the examination of the objective circumstances surrounding a search results in *fac-*

*tual* findings. Maj. op. at 1298. In reviewing a trial court's factual findings, our inquiry is not to determine if the record supports a different interpretation of the facts; our inquiry is whether the record contains sufficient evidence to support the trial court's findings.[4]  *Rahming,* 795 P.2d at 1341.

Based on the totality of the circumstances surrounding the stop of the vehicle, the subsequent actions of the three men in the vehicle, the lack of evidence uncovered prior to the search of the automobile, and the testimony of Officer Lucy, there was competent evidence in the record to support the trial court's finding that the purpose and scope of the search was unreasonable.

**4.** The majority indicates its willingness to review the trial court's findings de novo in its conclusion, "we disagree with the district court and

### III

In my view, the record contains evidence supporting the trial court's finding that the search of Weston's automobile was unreasonable. Accordingly, I would affirm the trial court's findings and suppression order.

SCOTT, J., joins in this dissent.

hold that Officer Lucy was justified in conducting a limited search of Weston's car for weapons." Maj. op. at 1299.